## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JONATHAN G. FORD, # S-02977, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 15-cv-342-JPG** |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| and DR. DAVID, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Sheridan Correctional Center ("Sheridan"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at the Hardin County Work Camp ("Hardin") and at Shawnee Correctional Center ("Shawnee"). Plaintiff claims that Defendant David, a physician, was deliberately indifferent to his serious medical conditions on two occasions, and that he still has not received treatment.

Plaintiff's first injury occurred in June or August 2012,[1] while he was playing softball (Doc. 1, p. 5). His nose was fractured when he was struck in the face with a softball. Plaintiff was transported from Hardin to Shawnee and was given an x-ray. The x-ray results showed Plaintiff's nose was not "displaced," but it was visibly crooked. Defendant David (the Shawnee physician and medical director employed by Defendant Wexford Health Sources) saw that Plaintiff's nose was no longer straight, and knew that Plaintiff was having trouble breathing because of the injury (Doc. 1-1, pp. 1-2). However, he refused to allow Plaintiff to have his nose

---

[1] Plaintiff's statement of claim (Doc. 1, p. 5) alleges the incident took place in June 2012; his attached grievance gives the date as August 1, 2012 (Doc. 1-1, p. 1).

fixed, because of the results of the x-ray report. *Id*.  To this day, Plaintiff still cannot breathe through his nose, and it is "beyond deformed."  Other than Motrin, no treatment was ever given for the nose injury, and Defendant Wexford Health Sources will not treat Plaintiff for this injury.

In August 2013, in a separate incident at Hardin, Plaintiff fell while playing basketball and broke his left clavicle (Doc. 1, p. 5).  He was again taken to Shawnee for treatment. Defendant David ordered the nursing staff to give Plaintiff a sling and Tylenol, and send him back to Hardin (Doc. 1-1, p. 3).  He was given a used "figure 8" sling.  Three days later he was taken for x-rays.  *Id*.  He was given more Tylenol, which did not relieve his severe pain.  He did not see a doctor for eight days.  Finally, he was examined by Defendant David, who said he could not do anything for Plaintiff (Doc. 1, p. 5).

After complaining, Plaintiff eventually was sent for an orthopedic consultation on October 22, 2013 (Doc. 1-1, pp. 3-4).  This specialist told Plaintiff that his clavicle was not healing properly and the fractured area was overlapped by three centimeters.  *Id*.  He also recommended surgery (Doc. 1, p. 5).  However, Plaintiff was never taken back to the specialist for a recommended follow-up, nor was he given further treatment by Defendant David (Doc. 1-1, p. 4).  Plaintiff was never given the surgery to repair his clavicle.  As a result, his left arm is impaired and he continues to suffer pain from the injury.  Additionally, he caught scabies from the used sling.

In addition to the constitutional claims, Plaintiff asserts claims for negligence, malpractice, and intentional infliction of emotional distress.  He seeks compensatory and punitive damages, as well as an order requiring Defendants to treat both conditions (Doc. 1, p. 6).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:**   Eighth Amendment deliberate indifference claim against Defendant David, for failing to treat or authorize treatment of Plaintiff's broken nose;

**Count 2:**   Eighth Amendment deliberate indifference claim against Defendant Wexford Medical Sources, for failing to provide treatment for Plaintiff's broken nose;

**Count 3:**   Eighth Amendment deliberate indifference claim against Defendant David, for failing to treat or authorize treatment of Plaintiff's broken clavicle;

**Count 4:**   Eighth Amendment deliberate indifference claim against Defendant Wexford Medical Sources, for failing to provide treatment for Plaintiff's broken clavicle;

**Count 5:**   Malpractice/negligence claim against Defendant David for failure to give proper treatment for Plaintiff's broken nose and fractured clavicle;

**Count 6:**   Intentional infliction of emotional distress claim against Defendant David.

Plaintiff's constitutional claims against Defendant David in Counts 1 and 3 shall proceed for further review. Likewise, at this preliminary stage, the claim in Count 2 shall proceed against Defendant Wexford Medical Sources. However, Counts 4, 5, and 6 shall be dismissed, for the reasons discussed below.

**Eighth Amendment Claims for Deliberate Indifference to Serious Medical Conditions**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.   An objectively serious condition includes an injury that has been "diagnosed by a physician as mandating treatment," or that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," as well as a condition that significantly affects an individual's daily activities, or which involves chronic and substantial pain.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

In this case, Plaintiff suffered two injuries that clearly required medical attention.  The complaint thus satisfies the objective component of an Eighth Amendment claim as to both the broken nose and fractured clavicle.  The remaining question is whether either Defendant acted or

failed to act with deliberate indifference to a known risk of serious harm.

**Counts 1 and 3 – Deliberate Indifference by Defendant David**

Both times that Plaintiff was injured, he alleges that Defendant David refused to provide treatment, and/or failed to allow Plaintiff to obtain treatment outside the prison. As a result, neither Plaintiff's broken nose nor his fractured clavicle have healed properly, and he continues to suffer from the after-effects of those injuries. At this stage of the case, Plaintiff has stated a constitutional claim against Defendant David that merits further review, in both **Count 1** and **Count 3**.

As to **Count 3**, however, Plaintiff shall note that this deliberate indifference claim is limited to the failure to treat his broken clavicle. Plaintiff's claim that he contracted scabies from a used sling does not suggest that Defendant David or any other person was deliberately indifferent to the risk that Plaintiff might be infected from the sling. At worst, giving him a used sling might have been negligent. As such, this portion of Plaintiff's claim would fall under Count 5, which shall be addressed below.

**Count 2 – Deliberate Indifference to Nose Injury by Defendant Wexford Health Sources**

Defendant Wexford Health Sources ("Wexford") is a corporation that employs Defendant David, and provides medical care at the prison, but it cannot be held liable solely on that basis. In order for a corporation to be held liable for deliberate indifference, it must have had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

In the present case, Plaintiff's allegations suggest that Defendant David may have denied

treatment for his broken nose based on Wexford's policies (Defendant David "could not send [Plaintiff] to get it fixed because of the results of the outside radiologist's report," Doc. 1-1, p. 2), but the complaint is not clear on that point.   However, Plaintiff also states that "to this day Wexford won't treat [him] for this" (Doc. 1, p. 5), which places the blame for the continued denial of treatment for the nose injury squarely on a Wexford policy or practice.   Therefore, Plaintiff's claim in **Count 2**, against Defendant Wexford for denying treatment for his broken nose, cannot be dismissed at this stage.

## Dismissal of Count 4 – Deliberate Indifference to Clavicle Injury by Defendant Wexford

Although Plaintiff states that he was never given the recommended surgery for his broken clavicle after seeing the outside specialist, he says only that Defendant David failed to obtain this treatment for him.   He never mentions any action, omission, policy, or practice on the part of Defendant Wexford that prevented him from having surgery or other treatment for the broken clavicle.   For this reason, the complaint fails to state a deliberate indifference claim against Defendant Wexford in reference to non-treatment of the broken clavicle.

**Count 4** shall therefore be dismissed without prejudice.   If facts exist that would show that a Wexford policy or practice caused Plaintiff to be denied treatment for the clavicle injury, plaintiff may submit an amended complaint[2] to include that information, and the Court may reconsider this claim.

---

[2] If Plaintiff chooses to submit an amended complaint, he shall note that an amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).   The Court will not accept piecemeal amendments to the original complaint. Thus, an amended complaint must stand on its own, without reference to any other pleading. It must include the facts supporting Counts 1, 2, and 3, which have survived threshold review, in addition to any additional facts Plaintiff wishes to include in reference to the counts that shall be dismissed without prejudice.   Plaintiff must also re-file any exhibits he wishes the Court to consider along with his amended complaint.

**Dismissal of Count 5 – Medical Malpractice/Negligence – Defendant David**

Plaintiff also brings claims of "medical malpractice" against Defendant David, based on the failure to treat Plaintiff's broken nose and clavicle, as described in Counts 1 and 3.  Count 5 may also include Plaintiff's claim for having contracted scabies from a used sling.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008).  "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). While this Court has supplemental jurisdiction over this state-law claim pursuant to 28 U.S.C. § 1367, this is not the end of the matter.

Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed

within 90 days of receipt of the records).  *See* 735 ILL. COMP. STAT. §5/2-622(a) (West 2013).[3]

A separate affidavit and report shall be filed as to each defendant.  *See* 735 ILL. COMP. STAT.

§5/2-622(b).

Failure to file the required certificate is grounds for dismissal of the claim.  *See* 735 ILL.

COMP. STAT. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  However,

whether such dismissal should be with or without prejudice is up to the sound discretion of the

court.  *Sherrod*, 223 F.3d at 614.  "Illinois courts have held that when a plaintiff fails to attach a

certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least

afforded an opportunity to amend her complaint to comply with section 2-622 before her action

is dismissed with prejudice.'"  *Id.*; *see also Chapman v. Chandra*, Case No. 06-cv-651-MJR,

2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff has failed to file the necessary affidavit.  Therefore, the

medical malpractice/negligence claim in **Count 5** shall be dismissed.  However, the dismissal

shall be without prejudice at this time, and Plaintiff shall be allowed 35 days to file the required

affidavit.  Thereafter, he must timely file the health care professional's report.  If Plaintiff timely

files the required affidavit and report, Count 5 may be reinstated in this action.  Otherwise, this

claim shall remain dismissed without prejudice.

**Dismissal of Count 6 – Intentional Infliction of Emotional Distress**

As discussed in Count 5, the Court has supplemental jurisdiction over this state-law claim

---

[3] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010.  *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety).  After *Lebron*, the previous version of the statute continued in effect.  *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010).  The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section.  *See* notes on Validity of 735 ILL. COMP. STAT. §5/2-622 (West 2013).

against Defendant David, which is also based upon the failure to adequately treat Plaintiff's injuries as described in Counts 1 and 3.

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'"  *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)).  *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.  *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community."  *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993).  Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case.  *Honaker*, 256 F.3d at 490.

In this case, nothing about Defendant David's conduct was objectively extreme or outrageous.  Further, there is nothing to indicate that Defendant David intended to inflict severe emotional distress upon Plaintiff.  The complaint therefore fails to state a claim upon which relief may be granted for this tort under Illinois law.  Accordingly, **Count 6** shall be dismissed from the action with prejudice.

## Injunctive Relief

In addition to seeking damages, Plaintiff asks the Court to "force Defendants to treat my

serious medical conditions" (Doc. 1, p. 6). However, Plaintiff is no longer housed at Shawnee or Hardin, so he is not currently under the care of Defendant David. Therefore, his request for an order requiring Defendant David to treat him has become moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at the prison where Defendant David is employed, would it be proper for the Court to consider injunctive relief against Defendant David. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

If Plaintiff is successful in proving his claim against Defendant Wexford, injunctive relief may be appropriate against that entity. But at this stage of the litigation, it is too early to determine whether this portion of Plaintiff's claim may succeed, and as noted, Count 4 against Defendant Wexford does not survive threshold review. Therefore, Plaintiff would be well advised to seek treatment from the medical professionals at the prison where he is now housed.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) shall be **GRANTED.** Service shall be ordered below.

## Disposition

**COUNTS 4 and 5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 6** is **DISMISSED** with prejudice for failure to state a

claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to the dismissed medical malpractice claim in **COUNT 5** against Defendant David, if he wishes to further pursue this claim, Plaintiff shall file the required affidavit pursuant to 735 ILL. COMP. STAT. § 5/2-622, within 35 days of the date of this order (**on or before June 3, 2015**).  Further, Plaintiff shall timely file the required written report of a qualified health professional, in compliance with § 5/2-622.  If the required affidavit and report is timely filed, **COUNT 5** may be reinstated.  Otherwise, Count 5 shall remain dismissed without prejudice.

The Clerk of Court shall prepare for Defendants **DAVID** and **WEXFORD HEALTH SOURCES**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 28, 2015**

*s/J. Phil Gilbert*
United States District Judge